UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Case No. 8:11-bk-22258-MGW
                                                Chapter 7
Fundamental Long Term Care, Inc.,

      Debtor.
_____/

GTCR Golder Rauner, LLC, et al.,                Adv. Pro. No. 8:13-ap-00928-MGW

      Plaintiffs,

v.

Beth Ann Scharrer, as Chapter 7 Trustee,
et al.,

      Defendants.
_____/

**MEMORANDUM OPINION ON MOTIONS FOR
<u>TEMPORARY INJUNCTION AND MOTION TO APPROVE COMPROMISE</u>**

Bankruptcy Code § 105 authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. Here, at least three probate estates are pursuing proceedings supplementary against numerous third parties to collect over $1 billion in judgments the probate estates obtained against Trans Health Management, Inc. ("THMI") (the Debtor's wholly owned subsidiary) and Trans Healthcare, Inc. ("THI") (THMI's former parent). As part of those proceedings supplementary, the probate estates are seeking to recover hundreds of millions of dollars in assets they claim THMI fraudulently transferred to third parties. Throughout this case, the Chapter 7 Trustee has contended that THMI's property is property of this bankruptcy estate. Recently, however, the

Trustee entered into a proposed compromise with the probate estates to allow them to continue pursuing their proceedings supplementary in exchange for the probate estates agreeing that 90% of any recovery in those proceedings will flow through this bankruptcy case. This Court must now decide whether to enjoin the probate estates from pursuing their proceedings supplementary and approve the probate estates' compromise with the Trustee.

Because the probate estates' proceedings supplementary seek to recover property that conceivably belongs to the bankruptcy estate and could ultimately lead to inconsistent results by different courts considering the same claims, the Court concludes it is appropriate to enjoin those proceedings under § 105 and require the probate estates to litigate their claims in this Court. The fact that the probate estates—in an effort to avoid the possibility of inconsistent results—have agreed not to take any action in the proceedings supplementary until this Court first rules on the fraudulent transfer (and other) claims filed in this Court does not change the Court's analysis. Nor does the fact that the probate estates have agreed—as part of their compromise with the Trustee—that 90% of any recovery in the proceedings supplementary (and other proceedings) would flow through this bankruptcy estate.

Accordingly, the Court—for the reasons set forth in more detail below—will enjoin the probate estates from pursuing any proceedings supplementary (or other collection efforts) involving property that is arguably property of the estate because those proceedings could conceivably have an effect on the administration of this bankruptcy estate. And the Court's ruling on the request for injunctive relief negates the reasons the Trustee entered into the compromise with the probate estates (i.e., eliminating litigation over the scope of the automatic stay and property of the estate; allowing the Trustee to efficiently and economically pursue assets

of the estate; and ensuring an equitable distribution of property of the estate). So the Court will—for the reasons set forth below—disapprove the Trustee's compromise with the probate estates.

## Background

On December 27, 2012, the Chapter 7 Trustee filed an adversary proceeding seeking to enjoin Fundamental Long Term Care Holdings, LLC and Fundamental Administrative Services, LLC from pursing a declaratory judgment action they filed against THMI—the Debtor's wholly owned subsidiary—in federal district court in New York.[1] In their New York declaratory judgment action, the Fundamental entities sought a declaration that any fraudulent transfer or alter ego claims THMI may have against them were time barred and, in the event they were not, that they were not liable to THMI under either theory.[2] According to the Trustee, THMI's fraudulent transfer and alter ego claims (if any) potentially belong to the estate, and the Fundamental entities' New York declaratory judgment action, in her view, was nothing more than a strategic move to keep this Court from considering and resolving the very issues the Trustee is obligated to investigate.[3]

The Court essentially agreed with that reasoning and granted the Trustee's request for injunctive relief.[4] The Fundamental entities later moved to dismiss the Trustee's adversary complaint for injunctive relief since the Trustee had not joined the six probate estates, which had filed wrongful death (or negligence) claims against THMI and THI, as necessary and indispensable parties.[5] Four of the probate estates had obtained judgments against THI and

---

[1] That adversary proceeding is styled *Scharrer v. Zack, et al.*, Adv. No. 8:11-ap-01198-MGW.

[2] Adv. No. 11-ap-01198, Adv. Doc. No. 1, Ex. 1.

[3] Adv. No. 11-ap-01198, Adv. Doc. No. 3 at ¶¶ 14, 34 & 41.

[4] Adv. No. 11-ap-01198, Adv. Doc. No. 20.

[5] Adv. No. 11-ap-01198, Adv. Doc. No. 25 at 13-16.

THMI totaling over $2 billion.[6] And apparently three of the probate estates were pursuing proceedings supplementary against the Fundamental entities and other entities commonly referred to throughout this case as the "targets." Two of the targets have removed portions of the proceedings supplementary to district court, where they remain pending. So the Fundamental entities argued that the probate estates must be included as part of the Trustee's complaint seeking injunctive relief. The Court initially denied the Fundamental entities' motion to dismiss based on the failure to join the probate estates (which are all creditors in this case).[7]

On reconsideration, however, the Court ruled in a September 12, 2013 Memorandum Opinion that any fraudulent transfer or alter ego claims—whether brought by the Trustee or the probate estates—should be litigated in this Court.[8] The Court reasoned in its September 12 Memorandum Opinion that it would be appropriate to enjoin the probate estates from pursuing fraudulent transfer and alter ego claims outside of this Court for two reasons: First, it appears that the fraudulent transfer the probate estates were seeking to undo may concern property of the estate since the assets that were allegedly transferred belonged, at least in part, to THMI.[9] And the Trustee has contended throughout this case that she has the authority to assert claims on THMI's behalf. Second, even if the fraudulently transferred assets are not property of the estate, the probate estates' pursuit of their fraudulent transfer claims detracts from the Trustee's ability to administer the bankruptcy estate since the probate estates' efforts in their proceedings supplementary could, among other things, lead to the possibility of inconsistent results.[10] But

---

[6] Three of the judgments were entered pre-petition; the fourth judgment was entered post-petition.

[7] Adv. No. 11-ap-01198, Adv. Doc. No. 55.

[8] *In re Fundamental Long Term, Inc.*, 2013 WL 4866336 (Bankr. M.D. Fla. 2013).

[9] *Id.* at *6-7.

[10] *Id.* at *7-8.

since there was no adversary complaint seeking injunctive relief, the Court could not enjoin the

probate estates from pursuing their proceedings supplementary.

The targets have now collectively filed three adversary proceedings seeking (i) a

declaration that they are not liable under any fraudulent transfer or alter ego theory; and (ii) to

enjoin the probate estates from pursuing their proceedings supplementary.[11] The targets filed

expedited motions for temporary injunctive relief in two of the adversary proceedings seeking to

enjoin the probate estates from pursuing their alter ego and fraudulent transfer claims in state

court.[12] The probate estates object to entry of injunctive relief for two reasons.[13]

First, the probate estates argue that the targets do not have standing to seek injunctive

relief under § 105. According to the probate estates, only the Trustee or (in some cases) other

creditors have the right to seek injunctive relief. They say there is no authority for the

proposition that the target of a third-party avoidance action has standing to seek injunctive relief.

Second, the probate estates say an injunction is unnecessary because they have addressed the

concerns raised in the Court's September 12 Memorandum Opinion.

### Conclusions of Law[14]

Since standing is a threshold issue, the Court will address that argument first. The probate

estates cite *Collier on Bankruptcy* for the general proposition that the "estate (or estate

---

[11]  This proceeding is one of the three filed by the targets. The remaining two adversary proceedings filed by the targets are styled: *Fundamental Long Term Care Holdings, LLC, et al. v. Fundamental Long Term Care, Inc., et al.*, Adv. No. 8:13-ap-00929-MGW; and *Ventas, Inc., et al. v. Estate of Juanita Amelia Jackson, et al.*, Adv. No. 8:13-ap-00958-MGW.

[12]  Adv. Doc. No. 4; Adv. No. 13-ap-00929, Adv. Doc. No. 3.

[13]  Adv. Doc. No. 20.

[14]  This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b).

representative) is the entity with standing to seek an injunction under section 105."[15] The Court

agrees with that as a general proposition. Putting aside the unique facts of this case, the Court

would ordinarily be inclined to agree that "[s]tanding to bring an adversary proceeding to enjoin

the actions of a third party rests with the debtor, debtor-in-possession or the trustee, and not with

the third party."[16] The argument by the probate estates, however, overlooks the plain text of §

105.

Under the plain language of § 105, this Court is authorized to enter an injunction on its

own motion:

> No provision of this title providing for the raising of an issue by a
> party in interest *shall be construed to preclude the court from, sua*
> *sponte, taking any action or making any determination necessary*
> *or appropriate to enforce or implement court orders or rules, or to*
> *prevent an abuse of process.*[17]

There is some authority for the proposition that the language in § 105 that a court is not

precluded from entering certain orders sua sponte was added to provide a statutory basis for a

bankruptcy court's (otherwise inherent) civil contempt powers.[18] But nothing in the plain

language of the statute limits a court's authority to issue orders under § 105 sua sponte to civil

contempt orders. In fact, a number of courts have recognized that bankruptcy courts may issue

injunctions under § 105 sua sponte.[19]

---

[15] Adv. Doc. No. 20 at ¶ 3 (citing 2 *Collier on Bankruptcy*, ¶ 105.03 at 105-36 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.)).

[16] *In re Venegas Munoz*, 73 B.R. 283, 285 (Bankr. D.P.R. 1987).

[17] 11 U.S.C. § 105(a) (emphasis added).

[18] 2 *Collier on Bankruptcy*, ¶ 105.02[1][c] at 105-10 (citing *In re Matthews*, 184 B.R. 594 (Bankr. S.D. Ala. 1995); *In re Duggan*, 133 B.R. 671 (Bankr. D. Mass. 1991); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 386 (Bankr. E.D. Pa. 1988); *In re Miller*, 81 B.R. 669, 676-78 (Bankr. M.D. Fla. 1988)).

[19] *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 740 (S.D.N.Y. 1999) (explaining that the provision in § 105 authorizing bankruptcy courts to act sua sponte is an "omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case") (quoting *In re Charles & Lillian Brown's*

The only limitation on a bankruptcy court's power to enter injunctive relief sua sponte is the requirement that the Court's equitable powers may only be used to further the goals and provisions of the Bankruptcy Code. This Court has previously recognized in at least two instances in this case that its powers under § 105 are not unfettered and that whatever equitable powers this Court has must be exercised within the confines of the Bankruptcy Code.[20] Here, the injunctive relief sought by the targets furthers the goals and the provisions—and is within the confines—of the Bankruptcy Code.

As this Court explained in its September 12 Memorandum Opinion, the probate estates' proceedings supplementary potentially (perhaps likely) interfere with property of the estate. At a minimum, they interfere with the Trustee's administration of this case. It may very well be, as the probate estates contend, that the targets are seeking to enjoin them from pursing the proceedings supplementary out of their own self-interest—not any desire to preserve the bankruptcy estate for the benefit of creditors. But that does not change the fact that the relief being sought is necessary to further the goals and provisions of the Bankruptcy Code. Because the relief sought is necessary to further the goals and provisions of the Bankruptcy Code, this Court may grant that relief sua sponte, and for that reason, the targets' standing (or lack thereof) is immaterial.

---

*Hotel, Inc.*, 93 B.R. 49, 54 (Bankr. S.D.N.Y. 1988)); *see also Vrabel v. Bronisky (In re Vrabel)*, 2005 WL 6960238 (9th Cir. BAP 2005) (explaining that the bankruptcy court had authority on its own motion to enjoin a debtor's spouse from filing for bankruptcy for 180 days, although the appellate court reversed the bar order because the debtor's spouse had not been afforded due process); *In re Obmann*, 2011 WL 7145760, at *4-5 (9th Cir. BAP 2011) (recognizing that a bankruptcy court may issue injunctive relief on its own motion but reversing entry of the bankruptcy court order because it awarded a remedy not contemplated by the Bankruptcy Code).

[20] *In re Fundamental Long Term Care, Inc.*, 2013 WL 4866336, at *6 (Bankr. M.D. Fla. Sep. 12, 2013); *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *8 n.56 (Bankr. M.D. Fla. Oct. 9, 2012) (citing *Norwest Bank Worthington v. Ahler*, 485 U.S. 197, 206 (1988)).

There is one other preliminary issue that must be addressed before turning to the merits of the targets' request for injunctive relief: jurisdiction. The probate estates worry that this Court does not have jurisdiction over their proceedings supplementary (particularly to the extent those proceedings arise out of a judgment against THI) or a federal court civil rights claim they filed. The concern is one of delay. Since subject-matter jurisdiction can never be waived or conferred by agreement, the probate estates fear the targets will simply wait until after this Court resolves their federal and state court actions to raise an objection to this Court's jurisdiction. The probate estates' concern about this Court's jurisdiction (understandably) confuses two issues: subject-matter jurisdiction and this Court's authority to enter a final order or judgment.

The jurisdiction of bankruptcy courts is governed by the interplay of two statutes: 28 U.S.C. § 1334 and 28 U.S.C. § 157.[21] Section 1334(b) provides that district courts shall have original—but not exclusive—jurisdiction over all civil proceedings (i) arising under title 11; (ii) arising in a title 11 case; or (iii) related to a case under title 11.[22] Section 157, in turn, authorizes district courts to refer cases arising under title 11, as well as any proceedings arising in or related to a title 11 case, to the bankruptcy courts.[23] All of the district courts in the United States have referred their bankruptcy jurisdiction to the bankruptcy courts. So this Court has jurisdiction over cases arising under title 11 and any proceedings arising in or related to a title 11 case.

The proceedings at issue fall within the Court's "related to" jurisdiction. As the Eleventh Circuit Court of Appeals recently explained in *In re Ryan*, a proceeding is "related to" a title 11 case if it could conceivably affect the administration of the bankruptcy estate:

---

[21] 28 U.S.C. §§ 157 & 1334(b).

[22] 28 U.S.C. § 1334(b).

[23] 28 U.S.C. § 157(a).

> A dispute is "related to" a case under title 11 when its result "could conceivably" have an "effect on the estate being administered in bankruptcy." The "proceeding need not necessarily be against the debtor or against the debtor's property," if it could affect the administration of the bankruptcy estate. "The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." As the Supreme Court recognized in *Celotex Corp.*, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[24]

In *Ryan*, the Eleventh Circuit held that a dispute between two non-debtor entities over which of them owned certain business records relating to property sold as part of the bankruptcy estate fell within the bankruptcy court's "related to" jurisdiction because the dispute could impact the amount of money in the estate.[25]

Like in *Ryan*, the proceedings at issue here could conceivably affect the amount of money in the estate. At the heart of the probate estates' supplementary proceedings is the claim that THMI fraudulently transferred hundreds of millions of dollars in assets to the targets. And the Trustee claims she has a right to pursue assets belonging to THMI. If THMI, in fact, fraudulently transferred assets to the targets and the Trustee is entitled to pursue those claims on THMI's behalf, then the fraudulent transfer and alter ego claims being pursued by the probate estates could lead to hundreds of millions of dollars coming into the Debtor's bankruptcy estate. The adversary proceedings filed by the targets likewise conceivably affect the amount of money in the estate because those proceedings seek a declaration that the targets are not liable under any fraudulent transfer, alter ego, or successor liability theories. Because the claims asserted by the

---

[24] *Winchester Global Trust Co. v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. Appx. 963, 967 (11th Cir. 2008) (citations and internal quotation marks omitted).

[25] *Id.*

probate estates and targets could conceivably affect the amount of money in the estate, there is little question this Court has jurisdiction over those claims.

The bigger question is whether the Court has the authority to fully adjudicate those claims. To some extent, 28 U.S.C. § 157 provides the answer to that question. Under § 157, bankruptcy courts are authorized to enter final judgments in core proceedings. With respect to non-core proceedings, bankruptcy courts are—absent consent of the parties—only permitted to enter proposed findings of fact and conclusions of law, which are then submitted to the district court for de novo review.[26] The significance of the Supreme Court's decision in *Stern v. Marshal* is that bankruptcy courts no longer have authority to enter final judgments in proceedings simply because they are designated as "core" by statute.

In *Stern*, the Supreme Court held that Congress exceeded Article III's constitutional limitations by defining all counterclaims to a proof of claim as "core," which effectively removed counterclaims based on common law from the jurisdiction of Article III courts. *Stern* left untouched bankruptcy courts' authority to adjudicate other "core proceedings" identified in § 157(b)(2)—such as fraudulent transfer proceedings. This Court has previously explained that, in its view, nothing in *Stern* precludes it from entering a final judgment in fraudulent transfer cases.[27] In any event, the Court need not determine at this point whether it has the constitutional authority to enter a final judgment in these proceedings because a lack of authority to enter a final judgment does not pose the same problems that lack of subject-matter jurisdiction would.

To begin with, unlike with subject-matter jurisdiction, parties can consent to the Court's authority to enter a final judgment. The Court is aware there is now—after *Stern*—a split among

---

[26] 28 U.S.C. § 157(c)(1)-(2).

[27] *In re Safety Harbor Resort & Spa*, 456 B.R. 703, 715-16 (Bankr. M.D. Fla. 2011).

the circuits regarding a party's ability to consent to a bankruptcy court fully adjudicating claims where it otherwise lacks the constitutional authority to do so. On the one hand, the Fifth,[28] Sixth,[29] and Seventh[30] Circuits have held that parties cannot waive a bankruptcy court's lack of constitutional authority to fully adjudicate a claim. On the other hand, the Ninth Circuit, in *In re Bellingham Insurance Agency*, has held that Article III's guarantee of an impartial and independent federal adjudication is subject to waiver.[31] The Supreme Court recently granted certiorari in *Bellingham* and presumably will resolve that uncertainty. Until the Supreme Court specifically rules otherwise, this Court is persuaded by *Bellingham* that the right to adjudication by an Article III court can be waived.

The Fifth Circuit (in *In re Frazin*), Sixth Circuit (in *In re Waldman*), and Seventh Circuit (in *Wellness International Network v. Sharif*) raise a compelling argument in support of the notion that Article III's guarantee of adjudication by an impartial and independent court cannot be waived—namely, Article III safeguards structural principles (i.e., checks and balances and separation of powers), as well as personal rights, and it should not be left to individual litigants to protect the structural principles. But it appears that courts holding parties cannot waive a bankruptcy court's lack of constitutional authority to enter final judgments in certain proceedings—perhaps with the exception of the *Sharif* Court—overlook one important point: the Supreme Court in *Roell v. Withrow*, although not directly passing on the constitutionality of the Federal Magistrate Statute, held that consent to proceedings before a magistrate judge (including

---

[28] *Frazin v. Haynes & Boone, LLP (In re Frazin)*, 732 F.3d 313, 319-20 (5th Cir. 2013).

[29] *Waldman v. Stone*, 698 F.3d 910, 917-18 (6th Cir. 2012).

[30] *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 768-70 (7th Cir. 2013).

[31] *Executive Benefits Ins. Agency v. Arkson (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 567 (9th Cir. 2012).

entry of a final judgment by the magistrate judge) can be *inferred* from a party's conduct during litigation.[32]

The Court can think of no reason why a litigant could consent to entry of a final judgment by a magistrate (Article I) judge but not by another Article I (bankruptcy) judge. The concern about safeguarding constitutional principles applies in either case. Either a party can consent to an Article I judge fully adjudicating a dispute or the party cannot. The fact that the power of a magistrate judge to fully adjudicate claims with the consent of the parties is conferred by statute does not provide a basis for distinguishing the two situations. After all, there is also statutory authority—28 U.S.C. § 157—for bankruptcy judges to adjudicate non-core proceedings with the consent of the parties. More important, if the concern is that individuals should not be permitted to waive the safeguard protecting principles of checks and balances and separation of powers, then Congress surely cannot waive those safeguards by statute. So the Court is comfortable— based on the Supreme Court's decision in *Roell*—that the parties can consent to this Court's authority to fully adjudicate the claims pending in the recently filed adversary proceedings.

Even if the parties could not consent, however, that does not mean a later determination that this Court lacks the constitutional authority to fully adjudicate the parties' claims would render any ruling by the Court on the merits a nullity—as would be the case if the Court lacked subject-matter jurisdiction. If these proceedings are determined to be "non-core" proceedings, then 28 U.S.C. § 157(c)(1) specifically authorizes this Court to propose findings of fact and conclusions of law. And regardless of whether these proceedings are determined to be "core," the district court—by standing order—has directed bankruptcy courts to hear any proceeding and

---

[32] *Roell v. Withrow*, 535 U.S. 580, 583 (2003). The Seventh Circuit did cite *Roell* in its *Sharif* decision, albeit without much discussion.

submit proposed findings of fact and conclusions of law where entry of a final judgment by this Court would be inconsistent with Article III.[33]

This Court is aware that the Seventh Circuit—in *Sharif*—recently held that bankruptcy courts cannot propose findings of fact and conclusions of law in cases where the proceeding is determined to be "core" but entry of a final judgment by this Court would be inconsistent with Article III. According to the *Sharif* Court, 28 U.S.C. § 157 only authorizes bankruptcy courts to propose findings of fact and conclusions of law in "non-core" proceedings. Under the *Sharif* Court's analysis, this Court would be powerless to propose findings of facts and conclusions of law if these proceedings were later determined to be "core."

This Court, however, believes the *Sharif* Court's analysis is flawed. That analysis is premised on the idea that there is no statutory grant of authority for bankruptcy courts to propose findings of fact and conclusions of law in "core" proceedings where the court does not have constitutional authority to fully adjudicate the claims. But bankruptcy courts have been granted that authority: 28 U.S.C. § 1334 and 28 U.S.C. § 157 unquestionably grant this Court subject-matter jurisdiction over these proceedings—whether they are "core" or "non-core." A grant of subject-matter jurisdiction, as the Supreme Court has repeatedly explained, is the power to hear cases.[34]

The power to "hear" cases must necessarily include the power to take any action that is otherwise not constitutionally or statutorily circumscribed. Otherwise, a grant of jurisdiction—absent additional statutory authorization to take specific acts in a case or proceeding—would be

---

[33] *In re Standing Order of Reference Cases Arising Under Title 11, United States Code*, Case No. 6:12-mc-26-ORL-22, Doc. No. 1.

[34] *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247 (2010); *Union Pac. R.R. Co. v. Brotherhood of Locomotive Engineers & Trademen*, 558 U.S. 67 (2009); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009).

meaningless. Under the *Sharif* Court's analysis, bankruptcy courts—despite having subject-matter jurisdiction—do not have any authority to take any action in "core" proceedings where entry of a final judgment by this Court would be inconsistent with Article III since there is no specific statute authorizing bankruptcy courts to do so. That cannot be the case. This Court's subject-matter jurisdiction—conferred by 28 U.S.C. § 1334 and 28 U.S.C. § 157—is sufficient authority for this Court (particularly in light of the district court's standing order of reference) to propose findings of fact and conclusions of law regardless of whether these proceedings are determined to be "core."

Having determined that this Court has jurisdiction over the adversary proceedings filed by the probate estates and targets and that any ruling on the merits will result in a final order adjudicating the parties' claims (or, at worst, proposed findings of fact and conclusions of law to be submitted to the district court), the Court turns to the remaining arguments against entry of the requested injunction. Distilled to its essence, the probate estates' argument is that an injunction is unnecessary because they are not seeking to obtain property of the estate and there is no longer any concern of inconsistent results.

To their credit, it appears the Trustee and the probate estates have attempted to address the concerns raised by the Court in its September 12 Memorandum Opinion by entering into a proposed settlement agreement, which they have asked this Court to approve.[35] Under the terms of that agreement, the probate estates are entitled to continue pursuing their proceedings supplementary in connection with their judgments against THI, as well as any independent claims they may have against THI and any third parties. The Trustee likewise retains her right to bring any avoidance (or other) actions she may have against the targets (or others). The entirety

---

[35] Doc. No. 1217.

of any recovery by the Trustee on her claims naturally will flow through this estate and be distributed to creditors in this case. And almost all—90% actually—of any recovery by the probate estates in their proceedings supplementary or on their independent claims will flow through the estate under the settlement agreement and be distributed according to the priorities established by the Bankruptcy Code.

As for the Court's concern about inconsistent results, the probate estates say that is largely illusory now. They do acknowledge that multiple actions before multiple courts could lead to the possibility of inconsistent results, at least in theory. But they point out that nothing is scheduled to happen in the proceedings supplementary until after the trial in these proceedings, which is currently scheduled for September 22, 2014.[36] In case there is any doubt, the probate estates have offered to ask to continue any state court (or other) proceedings until after this Court rules at the conclusion of the trial in the adversary proceedings. That means this Court will rule before anything else happens in the other proceedings, and as a consequence, the probate estates say there is no danger of inconsistent results since this Court's ruling will have preclusive (res judicata or collateral estoppel) effect.

While the Court certainly appreciates the efforts by the probate estates to address the Court's concerns, the Court nevertheless concludes that an injunction is still necessary. The problem with the settlement agreement between the Trustee and the probate estates is that it skips one important step: it, in effect, deputizes the probate estates to recover property for the benefit of this bankruptcy estate *without first determining whether the property is, in fact, property of the estate*. Allowing the creditors to continue pursuing their proceedings

---

[36] Adv. Doc. No. 26 at ¶ 4(j).

supplementary would require the state (or other) courts to determine what constitutes property of the estate.

The problem, of course, is that this Court has exclusive jurisdiction over property of the estate and is best suited to determine whether property is, in fact, property of the estate.[37] The key issue in deciding whether THMI's property is property of the estate is whether the Debtor and THMI should be treated as the same entity. One district court judge recently remanded an appeal of one of this Court's prior orders in this case to make that very determination;[38] another district court judge has apparently stayed her ruling on a different appeal until this Court makes that determination.[39] This Court does not, particularly in light of the district court's remand order, believe it is appropriate to delegate the determination of what constitutes property of the estate to the state (or other) courts presiding over the probate estates' proceedings supplementary.

Putting that issue aside, the Court still has concerns about the possibility of inconsistent results. The Court takes the probate estates at their word when they say there is nothing currently scheduled to take place in the proceedings supplementary before any trial in these adversary proceedings. The Court likewise takes them at their word when they say they would request a continuance or ask the other courts to coordinate their trial calendar around the trial in these adversary proceedings. And the other courts would likely grant that request. But this Court has no power to compel any court (state or federal) to stay their proceedings until this Court rules at trial. This Court only has jurisdiction over the parties. The only way to eliminate the possibility

---

[37] 28 U.S.C. § 1334(e); 11 U.S.C. § 541; *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010).

[38] The district court's remand order was filed in the main case. Doc. No. 1123.

[39] *Grochal v. Scharrer*, Case No. 8:12-cv-02858-MSS, Doc. No. 18.

of inconsistent results, then, is to enjoin the probate estates from pursuing their proceedings supplementary. Besides, if nothing is going to happen in the proceedings supplementary until this Court holds its trial, then the probate estates are not harmed in any way by the requested injunction. Accordingly, the Court concludes it is appropriate to enter the injunctive relief requested by the targets, although it is important to clarify the scope of that relief.

Specifically, the Court understands the probate estates have filed a civil rights claim against some (maybe all) of the targets in these proceedings. Since that action does not involve the recovery of property of this estate, this Court has no basis for enjoining that action. It appears, however, that the probate estates' civil rights claims may involve similar factual issues to those in these proceedings. So it is appropriate to direct the probate estates to request that the district court not schedule a trial in that action until after the trial in these proceedings. Otherwise, the probate estates are free to move forward with that claim. The probate estates are only enjoined from pursing their proceedings supplementary (or other collection efforts) that may implicate property conceivably belonging to this bankruptcy estate.

The only remaining issue with respect to the request for injunctive relief is whether the targets should be required to post a bond. The probate estates ask this Court to require the targets to post a bond or to enter some restrictions—similar to the "lock-up" restrictions this Court entered in *In re Safety Harbor & Spa*[40]—preventing the targets from dissipating their assets while these proceedings are pending. The Court understands the probate estates' concern. But that concern does not—like it would in the typical case—arise because of the injunction. If this Court did not enter an injunction, and the probate estates were free to pursue their proceedings supplementary, they would face the same risk that the targets could dissipate their assets. Because the possibility that the targets could dissipate assets does not come about because of the

---

[40] *In re Safety Harbor Resort & Spa*, 456 B.R. 703, 706-07 (Bankr. M.D. Fla. 2011).

injunction, the Court declines to impose any "lock-up" restrictions on the targets or require the targets to post a bond.

That leaves for consideration the Trustee's recent compromise with the probate estates. The targets object to the proposed compromise principally for two reasons: First, they say the compromise is an end-run around this Court's ruling in its September 12 Memorandum Opinion that any fraudulent transfer or alter ego claims must be litigated in this Court. Second, they say the Court does not have the authority to confer standing on the creditors to pursue any avoidance claims on behalf of the estate. The Court need not consider the targets' first objection since it has ruled that the probate estates are enjoined from pursuing their proceedings supplementary outside of bankruptcy. So if the Court approved the compromise, the probate estates would only be free to pursue their claims in this Court. It appears, at first glance, that the only issue for consideration on the parties' compromise is whether this Court can confer standing on the probate estates.

The targets, relying on *Surf N Sun Apts., Inc. v. Dempsey*,[41] argue that the Bankruptcy Code does not vest bankruptcy courts with authority to grant standing to individual creditors to pursue fraudulent transfer (or avoidance) actions on behalf of the estate. According to the *Surf N Sun* Court, Bankruptcy Code § 548 "contains a singular grant of authority to the trustee to avoid fraudulent transfers of a debtor's property for the benefit of all creditors," and there is no exception to that singular grant of authority in extraordinary circumstances because a bankruptcy court cannot use its equitable powers under § 105 to contravene the plain and unambiguous terms of the Bankruptcy Code.[42] The Trustee and probate estates rely on Judge Glenn's decision

---

[41] 253 B.R. 490, 491 (M.D. Fla. 1999).

[42] *Id.* at 492-94.

in *In re Jennings*[43] to support their claim that the Court can confer standing on the probate estates to pursue fraudulent transfer or alter ego claims on behalf of the estate.

As it turns out, the Court need not resolve that apparent conflict in the case law. Even if the Court concludes it has the authority to confer standing on the probate estates under extraordinary (or other) circumstances, it is not necessary to do so in this case. The Trustee raises three reasons for the Court to approve the compromise: (i) it eliminates litigation over application of the automatic stay and whether potential claims or causes of action are property of the estate; (ii) it allows the Trustee to collect assets of the estate and investigate the affairs of the Debtor and THMI as expeditiously as possible; and (iii) it would ensure an orderly and equitable distribution of any property of the estate. All of the reasons the Trustee offers for entering into the compromise have been resolved by the injunction this Court is entering.

Because the Court is enjoining the creditors from pursuing their proceedings supplementary outside of bankruptcy, there is no concern about the application of the automatic stay or conflicting decisions on what constitutes property of the estate. And without the settlement agreement, the Trustee can still pursue her claims economically and efficiently. The probate estates have already filed their adversary complaint, which the Trustee has intervened in.[44] There is no reason why she cannot simply ride the probate estates' coattails in that proceeding. Finally, any recovery in the adversary proceedings would necessarily be property of the estate and, therefore, subject to distribution under the Bankruptcy Code.

---

[43] 378 B.R. 687 (Bankr. M.D. Fla. 2006).

[44] Adv. No. 8:13-ap-00893, Adv. Doc. No. 16.

**Conclusion**

As counsel for one of the targets aptly put it, "the place is here, the time is now." Ideally, all of the fraudulent transfer and alter ego claims should be heard in one forum. The bankruptcy court is suited for exactly that purpose. And that process has already begun. Moreover, one of the purposes of the bankruptcy court is to provide a centralized place for handling litigation related to the bankruptcy estate. Significantly, that is the forum the probate estates chose when filing this involuntary case. If parties want to litigate claims that conceivably affect property of the estate (such as claims over THMI's assets), then those claims must be litigated in this Court. Accordingly, the Court will by separate order: (i) enjoin the probate estates from pursuing any proceedings supplementary or other collection efforts that could conceivably affect property of the estate; and (ii) deny the Trustee's motion to compromise.

**DATED** in Chambers at Tampa, Florida, on _November 19, 2013_

_____
Michael G. Williamson
United States Bankruptcy Judge

**Jeffrey W. Warren, Esq.**
  **Bush Ross, P.A.**
**Gabor Balassa, Esq.**
  **Kirkland & Ellis LLP**
*Counsel for GTCR Associates, VI; GTCR Fund VI, LP; GTCR Golder Rauner, LLC; GTCR Partners VI, LP; GTCR VI Executive Fund, LP; Edgar D. Jannotta, Jr.; THI Holdings, LLC*

**Gregory M. McCoskey, Esq.**
  **Akerman Senterfitt**
**Paul V. Possinger, Esq.**
  **Proskauer Rose LLP**
*Counsel for Fundamental Administrative Services, LLC; Fundamental Long Term Care Holdings, LLC*

**Patricia A. Redmond**
**Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.**
*Counsel for Alan M. Grochal*

**Carol A. Licko, Esq.**
**Hogan Lovells US LLP**
*Counsel for General Electric Capital Corporation*

**Steven M. Berman, Esq.**
**Seth P. Traub, Esq.**
**Shumaker, Loop &Kendrick, LLP**
*Counsel for the Chapter 7 Trustee*

**Harley E. Riedel, Esq.**
**Daniel R. Fogarty, Esq.**
**Stichter Riedel Blain & Prosser, P.A.**
*Counsel for the Estates of Juanita Jackson, Elvira Nunziata, Joseph Webb, Opal Lee Sasser,*
*Arlene Townsend, and Francina Spivery-Jones*

Attorney Jeffrey W. Warren is directed to serve a copy of this memorandum opinion on
interested parties and file of proof of service within 3 days of entry of this memorandum opinion.